OPINION OF THE COURT
Richard C. Giardino, J.
This matter comes before the court on defendant’s motion, pursuant to CPL 440.10, seeking an order vacating his 1986 conviction, which was based upon his plea of guilty to escape in the second degree (Penal Law § 205.10). Defendant’s core contention on this motion is that Camp Nueva Vista, the New *78 York State Division for Youth facility in which he was housed, was not a “detention facility” within the meaning of the Penal Law. Defendant asserts that the County Court was thus without jurisdiction to render judgment against him (CPL 440.10 [1] [a]), which rendered his plea involuntary and the assistance of his counsel ineffective (CPL 440.10 [1] [h]).
The People take issue with defendant’s characterization of the events at issue. They assert that defendant has failed to provide any actual evidence that Camp Nueva Vista was not a detention facility, and that he has failed to allege sufficient facts to support his claim of ineffective assistance of counsel. The People also raise two legal impediments to article 440 relief: (1) that when defendant entered his guilty plea, he waived the grounds raised on this motion, and (2) that defendant’s failure to appeal his conviction negates the relief he now seeks.
In defendant’s motion papers, he states that he “voluntarily elects to waive his right to appear” on this motion. While CPL 440.30 requires a hearing to determine any factual questions, at which defendant’s presence would presumably be required, such a hearing is not necessary on this motion. For the reasons set forth below, defendant’s motion is found to lack allegations constituting a legal basis for relief, and is summarily denied.
Defendant was adjudicated a juvenile delinquent in 1982 and placed with the New York State Division for Youth. During part of that placement, defendant resided at Camp Nueva Vista, situated in Fulton County. According to the colloquy between defendant and the court at the time of defendant’s guilty plea, defendant understood that Camp Nueva Vista was a “detention facility.” He described the facility as being comprised of a series of cottages staffed by “supervisors” who were the functional equivalent of guards. According to defendant’s plea allocution, he and two other facility residents agreed to “go AWOL.” Defendant stated, “we hid under the sofas and when everybody was in the back we jumped out the window.” Defendant thereafter hid in a wooded area until he encountered one of his cohorts driving an automobile, which defendant correctly assumed to have been stolen. Defendant rode with the other resident to Kingston, New York. He was apprehended sometime thereafter, hitch-hiking his way from Kingston to New York City.
On the face of the applicable statutes, defendant’s guilt appears to be straight forward. Penal Law § 205.10 (1) states that a person is guilty of escape in the second degree when *79 “[h]e escapes from a detention facility.” Penal Law § 205.00 (1) defines “detention facility” as
“any place used for the confinement, pursuant to an order of a court, of a person (a) charged with or convicted of an offense, or (b) charged with being or adjudicated a youthful offender, person in need of supervision or juvenile delinquent, or (c) held for extradition or as a material witness, or (d) otherwise confined pursuant to an order of a court.”
Defendant was housed at Camp Nueva Vista pursuant to an order of Bronx County Family Court after having been adjudicated a juvenile delinquent. By his own testimony, defendant was not free to leave. Camp Nueva Vista thus appears to fall within the definition just quoted. The commentaries to Penal Law article 205 note that the word “escape” is not defined by statute, but its “ordinary meaning” involves a conscious effort to get away (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 205.05, at 302, citing People v Hutchinson, 56 NY2d 868). Defendant’s actions certainly indicate a conscious effort to get away from Camp Nueva Vista. Given the facts recited by defendant, his conduct fell within the scope of what Penal Law §§ 205.00 and 205.10 define as escape in the second degree.
However, defendant’s central argument on this motion is that Camp Neuva Vista actually was not a “detention facility” within the meaning of the Penal Law. Defendant relies primarily on People v Ortega (69 NY2d 763), where the Court of Appeals held that a person confined to a nonsecure psychiatric facility could not be found guilty of escape in the second degree. At the outset, it should be noted that the Ortega decision was not rendered by the Court of Appeals until February of 1987, almost exactly one year after defendant entered his guilty plea. The Ortega ruling was not part of the law of this state at the time of defendant’s plea and sentence. It could not have affected either the jurisdiction of the County Court or the effectiveness of defendant’s attorney. The opinion is worthy of examination, however. The decision from Supreme Court which ultimately resulted in the Court of Appeals opinion in Ortega was issued prior to defendant’s guilty plea. The analysis employed in both decisions is also linked to other cases cited by defendant that were part of New York case law at the time of his plea.
The defendant in Ortega was charged with rape in the first degree, but was found not guilty by reason of mental disease or *80 defect. Initially, he was confined to a “secure” psychiatric facility, but was later transferred to a “nonsecure” facility upon a finding that he did not have a “dangerous mental disorder.” He left that facility without permission, and was indicted for escape in the second degree and escape in the third degree. Supreme Court, Bronx County, dismissed the indictment.
The charge of second degree escape was dismissed on the ground that a nonsecure psychiatric facility is not a “detention facility,” as defined in Penal Law § 205.00. Supreme Court reached that conclusion because “the primary emphasis is on care, treatment and rehabilitation of the mentally disabled” rather than on punishment (People v Ortega, 127 Misc 2d 717, 729). The court undertook a lengthy analysis of case law and the rules of statutory construction, due to the lack of any direct authority dealing with what it termed “insanity acquittees” (id. at 720). During this analysis, the Supreme Court noted a “significant” distinction between insanity acquittees and other groups such as juvenile delinquents, in that the Legislature had “directly addressed” the problem of escapes by those groups through explicit reference to them in the statutory definition of detention facility (see, id. at 727). The reasoning from Ortega thus appears inapposite to the present motion. The specific reference to juvenile delinquents in Penal Law § 205.00 should obviate the need to decide whether defendant in this case was in a secure or nonsecure facility.
However, the reference to juvenile delinquents in section 205.00 is not the end of the analysis. There is also a specific reference in section 205.00 to persons in need of supervision (PINS), yet two of the cases cited by defendant hold that a juvenile adjudicated to be a PINS cannot be convicted of escape in the second degree. One of these cases, the 1980 decision from Onondaga County Family Court in Matter of Freeman (103 Misc 2d 649), is central to this analysis. The Freeman case forms the basis for the holding in the other case cited by defendant, Matter of Sylvia H. (78 AD2d 875), and is also one of the cases found in the analysis conducted by the Supreme Court in the Ortega case discussed above.
The Freeman case involved a petition seeking to have a PINS adjudicated as a juvenile delinquent for having committed an act which, if committed by an adult, would have been a crime (Family Ct Act § 301.2). That act consisted of leaving a Division for Youth boarding house without permission, which was alleged to constitute the crime of escape in the second degree. The court in Freeman addressed the question of “secure” versus *81 “nonsecure” facilities in the context of statutory construction analysis. Initially, the need for such an analysis, given the facially unambiguous language quoted above, seems questionable. However, the Freeman decision specifically states that it is driven by recent changes in both state and federal statutory law which called into question the seemingly clear definition in Penal Law § 205.00.
The Freeman court noted attempts by the New York Legislature to comply with a requirement in recent federal legislation that a child adjudicated to be a PINS could not be placed in a “secure” detention facility. The court found that construing Penal Law § 205.10 to allow a PINS to be convicted of escape in the second degree would give the impression that a Division for Youth boarding home was a “secure facility” in violation of the federal mandate, thereby risking the loss of federal grant monies to the State of New York (Matter of Freeman, supra at 653). However, this was not the court’s only focus. The ruling in Freeman is stated upon two grounds. The second concerned the incongruity of attaching a criminal penalty to behavior which was held to be more closely akin to a child “running away” than to an inmate escaping from custody (id. at 655).
After noting the lack of New York authority on the subject, the Freeman decision turned to the laws of New Jersey and California. In the 1977 case State in Interest of M.S. (73 NJ 238, 374 A2d 445), a New Jersey Superior Court found that placement of a PINS (called “JINS” under New Jersey law) in “shelter care” was intended to be therapeutic rather than punitive. The crime of escape was termed “an affront to the authority of the state,” while a juvenile running away from a shelter was harming only his or her own well-being (Freeman, supra at 651-652). The courts and the Legislature of California had dealt with an outgrowth of this incongruity, a phenomenon called “bootstrapping.” That term came from the fact that a juvenile’s PINS status could elevate to that of juvenile delinquent because the act of running away also constituted a violation of the court order placing the juvenile in a PINS facility.
The Freeman court adopted the reasoning from the New Jersey decision that placement of a PINS in a detention facility was intended as therapeutic rather than punitive. Given that, the court expressed its desire to avoid “bootstrapping” the PINS at issue by declaring her to be a juvenile delinquent for an act which, while defined statutorily as a crime, was a common characteristic of PINS behavior and more harmful to the juvenile than to society. Since the case at bar lacks the policy *82 considerations of federal funding which surrounded the PINS at issue in Freeman, this second ground for that decision provides the more applicable analysis.
The question thus becomes whether the reasoning applied to PINS in Freeman and the other cases cited by defendant applies with equal force to juvenile delinquents. Defendant has cited no authority dealing with adjudicated juvenile delinquents, and this court’s own research has not revealed any direct guidance. One case, a 1996 decision from New York County Family Court (Matter of Joe A., 171 Misc 2d 241) involved an adjudicated juvenile delinquent charged with escape in the second degree, among other charges. However, after finding that it was “not clear” whether the Legislature intended the escape statute to apply to juvenile delinquents, the Family Court dismissed that count upon jurisdictional grounds not relevant here (id. at 247).
The Court of Appeals decision in Ortega, however, shows that the reasoning from Freeman is not necessarily confined to situations involving PINS. The Court of Appeals in Ortega effectively ratified the Supreme Court’s focus on the purpose behind the detention of the individual at issue. That analysis was conducted using legal authority that existed in 1986, when defendant entered his guilty plea in this case. The Court of Appeals opinion in Ortega specifically states the reason why the defendant could not be convicted of second degree escape to be the shift in that purpose once he was transferred to the nonsecure facility: “the purpose of his custody in the Commissioner of Mental Health was no longer ‘security, confinement and prevention of escapes’, but ‘therapy and rehabilitation’.” (People v Ortega, supra, 69 NY2d at 764-765.) The same basic reasoning used with regard to PINS placement in Freeman (i.e., therapeutic vs. punitive detention) was thus applied by the Court of Appeals to psychiatric detention. For purposes of this case, then, was the purpose of defendant’s detention at Camp Nueva Vista therapy or punishment?
A review of the sections of the Family Court Act which define PINS and juvenile delinquents, together with the Practice Commentaries annotated to the act, shows several distinctions between the two designations. As noted by the code commentators, both PINS and juvenile delinquents were originally treated together in article 3 of the act. A separate article 7 for PINS was later developed to cover “noncriminal” status offenses (see, Besharov and Sobie, Introductory Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act *83 art 3, at 9; Besharov, Introductory Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act art 7, at 4-5). The definitions given for the two terms by the act show the distinction. A “person in need of supervision” is defined in terms of a juvenile “who does not attend school in accord with [the Education Law] or who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of a parent * * * or other lawful authority * * * ” (Family Ct Act § 712 [a]). On the other hand, a “juvenile delinquent” is defined in terms of a juvenile “having committed an act that would constitute a crime if committed by an adult, * * * is not criminally responsible for such conduct by reason of infancy” (Family Ct Act § 301.2 [1]).
The definition of “juvenile delinquent” is further augmented by the statement of purpose in article 3, which was amended in 1976 to include a requirement that courts hearing a juvenile delinquency proceeding “consider the needs and best interests of the respondent as well as the need for protection of the community” (Family Ct Act § 301.1). The “protection of the community” was not included as a consideration in the purpose provision for PINS proceedings under article 7 (see, Family Ct Act § 711). Indeed, the 1976 decision of the Appellate Division, Third Department, in Certo v State of New York (53 AD2d 971) held that the State of New York was not subject to civil liability for a stabbing committed by a PINS specifically because the purpose of a PINS placement was not to protect society from the juvenile.
The commentators note that the inclusion of community protection as a consideration in article 3 caused disagreement among Family Courts, some holding that the purpose of a juvenile delinquency proceeding was still primarily rehabilitative and some holding that the amendment created a new and independent consideration for a court (Besharov and Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 301.1, at 16-17). One of the early cases under the amendment, however, after a lengthy and thoughtful analysis, concludes that protection of the public was always a consideration in juvenile delinquency proceedings, which simply was codified by the new statutory language (Matter of Rudy S., 100 Misc 2d 1112, citing People ex rel. Wayburn v Schupf, 39 NY2d 682). While appellate authority construing the purpose of juvenile delinquency proceedings as such is not plentiful, more recent decisions from the Third Department show that community protection remains a required consideration in juvenile *84 delinquency proceedings (see, e.g., Matter of April FF., 195 AD2d 860; Matter of Brian JJ., 175 AD2d 416).
In the case at bar, defendant’s record, as shown in the pre-sentence investigation report submitted as part of the People’s opposition papers, includes “at least nine” court appearances for conduct typical of PINS and juvenile delinquency procedures, plus two other “adult arrests” involving charges of criminal mischief, criminal trespass in the third degree, burglary in the third degree and possession of stolen property. These incidents all occurred prior to defendant’s adjudication as a juvenile delinquent. Defendant’s behavior was not harmful only to himself, and it is reasonable to conclude that his detention was not solely therapeutic. Moreover, defendant’s own description of his actions in making good his escape, including the use of a car he knew to be stolen, involved harm to persons other than himself, and distinguishes this case from the decisions he cites, where PINS simply walked through unlocked doors (see, Matter of Brian JJ., supra).
The analysis invited by defendant’s motion centers on the purpose behind his detention. That analysis has been focused primarily on juveniles who have been adjudicated to be PINS, but was applied by the Court of Appeals in the Ortega case to include psychiatric detainees held in nonsecure facilities. Granting the relief requested by defendant in this case would require a further expansion of that reasoning to include juvenile delinquents, which effectively would remove the reference to juvenile delinquents from the definition of “detention facility” found in Penal Law § 205.00. The legal authority available to the court on the nature of juvenile delinquency proceedings and the particular facts of this case show that such an expansion is not appropriate. Defendant’s conduct fell within the statutory definition of escape in the second degree. Absent a reason to alter that definition, his motion cannot succeed.
Turning to the provisions of GPL article 440, the situation presented by this motion is that provided for in section 440.30 (4) (a), in that defendant’s motion fails to set forth any ground constituting a legal basis for the motion. Therefore, defendant’s motion is denied.