Matter of Tyreek B. (2003 NY Slip Op 23926)

Matter of Tyreek B.

2003 NY Slip Op 23926 [2 Misc 3d 717]

December 4, 2003

Family Court, New York County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, April 28, 2004

[*1]
In the Matter of Tyreek B., a Person Alleged to be a Juvenile Delinquent, Respondent.
Family Court, New York County, December 4, 2003

APPEARANCES OF COUNSEL

Legal Aid Society (Karen Yazmajian of counsel), Law Guardian. Michael A. Cardozo, Corporation Counsel, New York City (Melissa Sheer of counsel), for presentment agency.

{**2 Misc 3d at 718} OPINION OF THE COURT

Mary E. Bednar, J.
On October 3, 2003 the presentment agency filed a petition charging that the respondent committed an act which if committed by an adult would constitute the crime of promoting contraband in the second degree (Penal Law § 205.20 [1]). A fact-finding hearing commenced before me on October 6, 2003 and was continued on October 8, 2003. Community Associate Mark Sparrow, Johnny Howard, and Probation Officer Tieakia Dennis testified for the presentment agency. At the conclusion of the presentment agency's case the respondent made a prima facie motion to dismiss the petition. I make the following findings of fact and conclusions of law.

Findings of Fact

On August 25, 2003 the respondent made his initial appearance concerning a petition filed against him in Kings County Family Court. He was released on that date with the condition that he attend Kings Alternatives to Detention. (Hereinafter ATD.)
Johnny Howard is the director of Kings ATD. She testified that participants in Kings ATD are required to attend the program Monday through Friday, from 8:00 a.m. to 4:00 p.m. The program is located on the sixth floor of 345 Broadway and consists of offices for the probation staff, a cafeteria, a recreational area, and classrooms for the attendees.
Ms. Howard also told the court that the attendees are not locked inside the building, but that they are supposed to remain inside the facility during its hours of operation. Attendees who leave the premises during operating hours are considered absent without leave, and ATD "would request of the court their parole to ATD be terminated forthwith." (Transcript, Oct. 8, 2003, at 7-8, lines 25, 1.)
Ms. Howard went on to say that before entering the premises of Kings ATD, each [*2]attendee is searched. A security officer has the attendees empty their pockets and then conducts a pat down of each attendee.
Mark Sparrow, a community associate with the New York City Department of Probation, testified that on October 2, 2003 at 8:30 a.m. he was conducting searches at the entrance to Kings ATD. He told the court that he recovered a plastic bag from the respondent's pocket, which he believed contained marijuana.{**2 Misc 3d at 719}
On cross-examination Mr. Sparrow was asked several questions about the nature of ATD. During this part of his testimony the following exchange occurred:
"Q: [T]he purpose of the program is to provide eight-hour five-days-per-week supervision; isn't that true?
"A: Right." (Transcript, Oct. 6, 2003, at 8, lines 13-16.)
Probation Officer Tieakia Dennis testified that on October 2, 2003 he was stationed at the entrance to Kings ATD and saw Mr. Sparrow remove a plastic bag from the respondent's person. Mr. Sparrow then gave the bag to Probation Officer Tieakia. The bag and its contents were submitted into evidence, along with a laboratory report showing the contents of the bag to be marijuana.

Conclusions of Law

"In determining a motion to dismiss for failure to establish a prima facie case, the evidence must be accepted as true and given the benefit of every reasonable inference which may be drawn therefrom. The question of credibility is irrelevant, and should not be considered." (Gonzalez v Gonzalez, 262 AD2d 281, 282 [2d Dept 1999] [citations omitted].)
Penal Law § 205.20 (1) states in pertinent part, "[a] person is guilty of promoting prison contraband in the second degree when . . . he knowingly and unlawfully introduces any contraband into a detention facility . . . ."
The term "detention facility" is defined in Penal Law § 205.00 (1). That provision states in pertinent part: " 'Detention facility' means any place for the confinement . . . of a person . . . charged with being . . . a . . . juvenile delinquent." (Emphasis supplied.)
In oral argument on his motion, the respondent maintained that the applicable statute for defining detention facility is Family Court Act § 301.2 (3), which states:
" 'Detention' means the temporary care and maintenance of children away from their own homes, as defined in section five hundred two of the executive law. Detention of a person alleged to be or adjudicated as a juvenile delinquent shall be authorized only in a facility certified by the division for youth as a detention facility pursuant to section five hundred three of the executive law."
The respondent argues that ATD is not a detention facility in accordance with this definition, because it only operates during limited {**2 Misc 3d at 720}weekday hours and does not lock its attendees inside. The respondent also notes that the presentment agency failed to introduce evidence showing that Kings ATD is certified as a detention facility by the Division for Youth.
The presentment agency opposes the dismissal motion. They argue that the applicable definition of detention facility is found in Penal Law § 205.00 (1). According to the presentment agency, ATD is a detention facility because its attendees are prohibited from leaving the building [*3]during the program's hours of operation.
The issue of whether ATD is a detention facility is apparently one of first impression. For the reasons which follow I find that the presentment agency has failed to establish a prima facie case.
In analyzing the issue presented the Penal Law definition of detention facility is controlling, since the respondent is charged with violating a provision of that statute. To use any other definition would effectively eviscerate Penal Law § 205.20. In addition, the Legislature made clear its intention to have Penal Law § 205.00 (1) apply to juvenile delinquency cases, by specifying that detention facilities could be used for "a person charged with being . . . a . . . juvenile delinquent." (See, People v Juarbe, 194 Misc 2d 77 [Fulton County Ct 2002].) In any event, there is no alternative to the Penal Law definition of detention facility, as that term is nowhere defined in either article 3 of the Family Court Act or article 19-G of the Executive Law.
The distinction between detention facilities and less restrictive settings was discussed in People v Ortega (69 NY2d 763 [1987]). The defendant in that case was found to have a mental defect after a rape conviction, and was placed in a secure facility by the Commissioner of Mental Health. The defendant was later moved to the Bronx Psychiatric Center, a nonsecure facility. After absconding from the Bronx Psychiatric Center he was charged with escape in the second and third degrees (Penal Law §§ 205.05, 205.10). A dismissal of the petition by the trial court was upheld by the First Department. The Court of Appeals affirmed, and so doing, the Judges found that the Bronx Psychiatric Center was not a detention facility. They reasoned that, "the purpose of his custody in the Commissioner of Mental Health was no longer 'security, confinement and prevention of escapes', but 'therapy and rehabilitation.' " (People v Ortega, supra at 764-765, quoting People v Ortega, 127 Misc 2d 717, 728 [1985].)
Kings ATD is less restrictive than the facility examined in People v Ortega (supra). The trial court's decision in People v Ortega {**2 Misc 3d at 721}(127 Misc 2d 717 [1985]) noted that the defendant was prohibited from leaving the Bronx Psychiatric Center unless he obtained permission to do so. The respondent in the case at bar, however, was permitted to leave Kings ATD every weekday at 4:00 p.m. and did not attend the program on the weekends. Consequently, the purpose of Kings ATD was something other than " 'security, confinement and prevention of escapes' " (People v Ortega, supra at 765).
Rather than confinement, the purpose of ATDas was expressed by community associate Sparrowis supervision. Each court date the program reports on the respondent's behavior while in the program and immediately informs the court if the respondent goes AWOL. ATD's nonrestrictive character becomes clear when looking at the options the court has when determining the respondent's status at the initial appearance.
Family Court Act § 320.5 (1) and (2) state in pertinent part, "[a]t the initial appearance, the court in its discretion may release the respondent or direct his detention . . . The court may in its discretion release the respondent upon such terms and conditions as it deems appropriate." Detention may only be ordered after a finding that "there is a substantial probability that [the respondent] will not appear in court on the return date; or . . . there is a serious risk that he may before the return date commit an act which if committed by an adult would constitute a crime." (Family Ct Act § 320.5 [3] [a], [b].) When a respondent is released to ATD there is, thus, necessarily a finding that the respondent is likely to return to court and is unlikely to engage in illegal behavior.
[*4]
Since Family Court Act article 3 does not define release, "its common meaning is denoted."[FN*]

(People ex rel. Powell v Warden of Kings County Hosp., 73 AD2d 654, 655 [2d Dept 1979].) The dictionary definition of release is, "to set free from restraint,{**2 Misc 3d at 722} confinement, or servitude" (Merriam Webster's Collegiate Dictionary 987 [10th ed 1993]). As such, the respondent's release to ATD is inapposite to the argument that ATD is "used for . . . confinement" as defined in Penal Law § 205.00 (1). The characterization of ATD as a nonrestrictive facility also comports with the Brooklyn Family Court Judge's finding that the respondent is not a risk to flee or engage in illegal behavior.
Therefore, after viewing the evidence in the light most favorable to the presentment agency the respondent's motion to dismiss the petition is granted.

Footnotes

Footnote *: Although confinement is not defined in the Penal Law the dictionary definition of confine, which is "a) to hold within a location b) imprison" (Merriam Webster's Collegiate Dictionary 242 [10th ed 1993]), is unhelpful. Although it would seem that this definition would be inapplicable to a juvenile nonsecure detention facility (see, Family Ct Act § 301.2 [5]), in Matter of Bernard T. (250 AD2d 532 [1998]) the First Department ruled that juvenile nonsecure detention facilities are detention facilities pursuant to the Penal Law. (But see, Matter of Caitlin VV., 262 AD2d 696 [3d Dept 1999].) The major distinction between juvenile nonsecure detention facilities and ATD is that juvenile nonsecure detention facilities require respondents to stay overnight (see, 9 NYCRR 180.9 [c] [5]).